# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RICHARD HOWARD GLANTON,<br><br>          Debtor.<br>_____<br><br>In re:<br><br>JOHN M. MCDONNELL, TRUSTEE FOR DEBTOR ESTATE OF RICHARD HOWARD GLANTON,<br><br>          Plaintiff,<br><br>v.<br><br>EILEEN CANDIA, A/K/A EILEEN GLANTON,<br><br>          Defendant.<br>_____ | Case No. 3:23-cv-22912-RK<br><br><br><br>Chapter 7 Bankruptcy<br>*In re: Richard Howard Glanton*<br>Case No. 22-11055-CMG<br><br><br>Adversary Pro. No. 22-01335 (CMG) |

---

**BRIEF OF APPELLANT NEWPORT INVESTMENT GROUP, LLC FROM ORDER APPROVING RULE 9019 SETTLEMENT BETWEEN PLAINTIFF JOHN M. MCDONNELL AND DEFENDANT EILEEEN CANDIA**

---

**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel to Appellant Newport Investment Group*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Bankr. P. 8012(b) and 8014(b), Appellant submits that no party to the within appeal is a corporation.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................................1

TABLE OF AUTHORITIES ...........................................................................................3

STATEMENT OF JURISDICTION..................................................................................5

STATEMENT OF APPLICABLE STANDARD OF APPELLATE REVIEW .............................6

CONCISE STATEMENT OF THE CASE .........................................................................6

    A.  The Bankruptcy Case…………………………………………………….....6

    B.  The Adversary Case………………………………………………………8

    C.  This Appeal…………………………………………………………….10

SUMMARY OF THE ARGUMENT…………………………………………………....10

LEGAL ARGUMENT.................................................................................................10

  I. THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED.....................................10

    A.  The Bankruptcy Court Erred in its Factual Findings ……………………………10

    B.  The Settlement Should Not Have Been Approved Under The *Martin* Factors……18

  II. THE DEBTOR AND DEFENDANT ENGAGED IN A FRAUDULENT TRANSFER......19

    A.  Tenancy By The Entirety Was Broken…………….. ……………………………19

    B.  Once Tenancy by the Entirety is Broken, It Cannot Be Revived…………………22

    C.  The Mortgage, if it Still Exists, is Voidable as a Fraudulent Conveyance………….24

CONCLUSION..........................................................................................................25

## <u>**TABLE OF AUTHORITIES**</u>

**<u>Federal Cases</u>**

*Binker v. Pennsylvania,* 977 F.2d 738, 744 (3d Cir. 1992)……………………………………………..5

*Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi*, 389 N.J. Super. 219, 227 (Ch. Div. 2006…….22

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 354-55 (1985)……………………19

*Feld v. Zale Corp.* (*In re: Zale Corp.*), 62 F.3d 746, 754 (5th Cir. 1995)…………………………17

*Gilchinsky v. National Westminster Bank N.J.*, 732 A.2d 482, 488, 159 N.J. 463 (N.J. 1999)…..23

*N.T.B. v. D.D.B.*, 442 N.J. Super. 205, 218 (App. Div. 2015……………………………………22

*Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 701 (3d Cir. 1993)…………………..19

*Paulsen v. Olsen*, 3:22-cv-50111 (N.D. Ill. Nov. 20, 2023)………………………………………22

*Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992)……………………………………..6

*Vander Weert v. Vander Weert*, 304 N.J. Super. 339, 700 A.2d 894, 897 (App. Div. 1997)…….22

*Will v. Nw. Univ. (In re: Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006)……………………14

**<u>Bankruptcy Cases</u>**

*In re: Caola*, 422 B.R. 13 (Bankr. D.N.J. 2010)…………………………………………………20

*In re: Century City, Inc.*, 8 B.R. 25 (Bankr. D.N.J. 1980)………………………………………..25

*In re: Hechinger Investment Co. of Delaware, Inc.*, 327 F.3d 284 (3d Cir. 2003)………………16

*In re: Holmes*, 603 B.R. 757, 770 (D.N.J. 2019)………………………………………………...6

*In re: Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022)…………………………………6

*In re: Martin*, 91 F.3d 389, 393 (3d Cir. 1996)…………………………………....13, 14, 17

*In re: Poplar Forest, Inc.*, 324 B.R. 88 (Bankr. D.N.J. 2005)……………………………………22

*In re: Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989)…………………………………6

*In re: Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020)…………………………6

*In re: Swiontek*, 376 B.R. 851, 867 (Bankr. N.D. Ill. 2007)……………………………………23

*In re TMT Trailer Ferry, Inc.*, 434 F.2d 804 (5th Cir. 1970)……………………………………16, 17

*In re: Weiss*, 638 B.R. 543 (Bankr. D.N.J. 2022)……………………………………………………21

**<u>Federal Statutes</u>**

11 U.S.C. § 105(a)……………………………………………………………………………………7

11 U.S.C. §363(h)…………………………………………………………………………..,5, 7, 16

11 U.S.C. § 548(a)(1)……………………………………………………………………………19

11 U.S.C. § 544…………………………………………………………………….…………23

11 U.S.C. § 704(1)……………………………………………………………………………..13

28 U.S.C. § 158(a)..........................................................................................................5

28 U.S.C. § 1291..........................................................................................................5

11 U.S.C. § 523………………………………………………………………………………6

11 U.S.C. § 727………………………………………………………………………………6

**<u>New Jersey Statutes</u>**

New Jersey Uniform Fraudulent Transfer Act……………………………………………………23

New Jersey Statutes Annotated 4:3-17.4…………………………………………………..20, 21

New Jersey Statutes Annotated 25:2-27……………………………………………………23

## STATEMENT OF JURISDICTION

Title 28 of the United States Code, Section 158(a) grants district courts jurisdiction to hear appeals (1) from final judgments, orders, and decrees. 28 U.S.C. § 158(a) (2010). Because the Bankruptcy Court's order approving the settlement agreement is a final order, the District Court has appellate jurisdiction under 28 U.S.C. § 1291. *Binker v. Pennsylvania,* 977 F.2d 738, 744 (3d Cir. 1992).

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred in approving the Settlement under Federal Rule of Bankruptcy Procedure 9019 due to inaccuracies in the factual findings.

2.      Whether the Bankruptcy Court's approval of the Settlement was erroneous based on misinterpretation of evidence, failure to consider relevant facts, and drawing unreasonable inferences, thereby impacting its determination of fairness, equity, and the best interests of the estate.

3.      Whether the Bankruptcy Court erred by not deciding[1] the Trustee's Motion for Summary Judgment under 11 U.S.C. § 363(h) to sell the real property located at 26 Snowden Lane, Princeton, New Jersey 08540 in order to potentially realize in excess of $2,000,000.00 in value for the estate immediately, instead of $400,000.00 paid out over 15 months under the Settlement.

4.      Whether the Bankruptcy Court erred and committed an abuse of discretion by neglecting to consider relevant facts or address a significant issue presented regarding tenants in the entirety being broken due to the Defendant and Debtor's fraudulent transfer of the Property deed fifty-four (54) days pre-petition; and neglecting to order that tenants in the entirety cannot be revived after the Defendant transferred it back three (3) months post-petition.

---

[1] The Bankruptcy Court decided the Motion for Summary Judgment was moot as it granted the 9019 Motion.

## STATEMENT OF APPLICABLE STANDARD OF REVIEW

In cases originating in the Bankruptcy Court, district courts occupy the first level of appellate review.  A district court considering such an appeal "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re: Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (quoting *In re: Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020)). And a court "must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (quoting *In re: Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989)).  The district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re: Holmes*, 603 B.R. 757, 770 (D.N.J. 2019) (citation omitted).

## CONCISE STATEMENT OF THE CASE

### A.    The Bankruptcy Case

On December 13, 2021, fifty-four (54) days pre-petition, the Debtor, a licensed attorney[2] transferred his interest in a single-family residence located at 26 Snowden Lane, Princeton, NJ 08540 (the "**Property**") to his wife Eileen Candia a/k/a Eileen Glanton (the "**Defendant**"), also a licensed attorney,[3] for one dollar ($1.00).

On February 9, 2022 (the "**Petition Date**"), the Debtor filed a voluntary Chapter 11 Petition in the Bankruptcy Court for the District of New Jersey, Case No. 22-11055 (CMG). ("**BK Case**," ECF 1.)[4]

---

[2] The Debtor was admitted into the Pennsylvania Bar in 1973; Bar Number: 18319. His license is still active.
[3] The Defendant was admitted to the New Jersey Bar in 2001; Bar Number: 001892001. Her license is also still active.
[4] All references to the docket herein are to the Debtor's main Chapter 7 case except when specifically referencing the Adversary Proceeding from which this appeal stems, which will be referred to as "**A/P ECF No.__**."
References to items included in the Appellant's Appendix, attached hereto, are cited throughout as "**Appx___**."

On June 7, 2022, Appellant Newport Investment Group, LLC ("**Appellant**") filed a proof of claim ("**POC 6**") for $7,186,756.38 as a secured creditor under a Judgment entered against the Debtor by the California Superior Court in 2017.[5]

On August 30, 2022, the Bankruptcy Court entered an order converting the BK Case to a case under Chapter 7 of the Bankruptcy Code. [ECF No. 95.]

On August 31, 2022, John Michael McDonnell (the "**Trustee**") was appointed as Chapter 7 Trustee pursuant to Section 701 of the Bankruptcy Code. [ECF No. 95.]

### B.    The Adversary Proceeding

The Adversary Case was commenced by the Trustee on October 12, 2022 (the "**Adversary Case**"), alleging, *inter alia*, pursuant to 11 U.S.C. §363(h) seeking authorization for the sale of the Property. [A/P ECF No. 1.]  On October 27, 2022, Defendant filed her answer. [A/P ECF No. 3.]

On May 25, 2023, the Trustee moved for summary judgment [A/P ECF No. 10] (the "**MSJ**") seeking Court authorization, pursuant to 11 U.S.C § 363(h), to sell the Property. (*Id.* ¶ 17.)  The MSJ states, in relevant part, that the recorded deeds show two (2) transfers of the Property back and forth between the Debtor and Defendant – December 13, 2021, to the Defendant pre-petition, and then August 5, 2022, back to Debtor and Defendant, respectively.  (*Id.* at ¶ 16.) The MSJ, at all times relevant, was unopposed by the Defendant.[6]

---

[5] The validity of the Judgment was confirmed by the Bankruptcy Court in an Opinion and Order on July 7, 2023 ("**BK Opinion**") under a separate Adversary Complaint Newport filed against the Debtor on December 6, 2022 for nondischargeability of debt pursuant to U.S.C. §523 and denial of discharge pursuant to 11 U.S.C. §727, Adv. Case #: 22-01388 (CMG) (the "**Newport A/P**"): "The Court finds that the Judgment is valid and in full force and effect as against Glanton"; and "This Court gives the Judgment full faith and credit here" Newport A/P ECF. No. 27; 28. The Bankruptcy Court's order was also recently *affirmed* on June 30, 2024 by the Hon. Georgette Castner of the United States District Court after the Debtor attempted to appeal the BK Opinion, Case No.: 3:23-cv-03868-GC.

[6] The MSJ was returnable on June 27, 2023, however despite being *unopposed*, was adjourned five (5) separate times July 11, 2023, August 8, 2023, August 22, 2023, September 12, 2023, and October 3, 2023.  On September 14, 2023, Appellant's counsel docketed a letter to the Bankruptcy Court expressing his concern over the numerous inexplicable adjournments now a year after the Adversary Case had been commenced. [Appx0096-0097;A/P ECF Nos. 18, 19]. On October 3, 2023, the morning of the unopposed MSJ hearing, the Trustee represented a settlement had been reached, and the MSJ hearing was then adjourned to coincide with the hearing date of the 9019 Motion.

On October 17, 2023, the Trustee filed a Rule 9019 motion pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 [A/P ECF No. 20] (the "**9019 Motion**") for order approving the settlement reached between the Trustee and the Defendant for the Property (the "**Settlement**").

On November 14, 2023, Appellant filed an Objection to the Trustee's 9019 Motion. [A/P ECF No. 23] ("**9019 Objection**") arguing that Trustee was seeking to settle a matter for $400,000, with payments spread out over fifteen (15) months.  Appellant argued the Settlement was neither fair and equitable since it reflected a far too de minimis amount, representing less than fifteen (15%) of the fair market value of the Property, and took far too long to satisfy. (*Id.* ¶ 18.)  Appellant also argued the Bankruptcy Court should deny the 9019 Motion and grant the MSJ which had been pending for over six (6) months, allowing the Trustee to sell the Property and reap 85% more representing approximately $2,167,070.00 more for the estate. (*Id.*)

On November 17, 2023, the Trustee [A/P EFC No. 24], and the Defendant [A/P EFC No. 25] each filed their own responses to the 9019 Objection.

On November 21, 2023, the Bankruptcy Court held a hearing on both matters, the unopposed MSJ and 9019 Motion (the "**Hearing**"). The Bankruptcy Court rendered its decision on the record approving the Settlement and granting the 9019 Motion and ordering the MSJ moot (the "**Order**").[7]  [Minute entry; A/P ECF No. 26.]

**C.**     **This Appeal**

On December 5, 2023, Appellant timely docketed its Notice of Appeal of the Order (the "**Appeal**"). [A/P ECF No. 28.]   On December 6, 2023, Appellant's Transmittal of Record on Appeal [A/P ECF No. 30], Notice of Docketing Record on Appeal [A/P ECF No. 31], and the Designation of Record on Appeal [A/P ECF No. 31] were docketed.

---

[7] Appx0368;T24:14-16: " …will approve the settlement, which makes the motion for summary judgment moot. I'll mark that moot."

On December 19, 2023, Appellant's Designation of Record on Appeal and Statement of Issues on Appeal were docketed in this Appeal.[8] [APP ECF No. 2.] On January 3, 2024, the Defendant filed a document purporting to be the "Appellee" titled "*Designation of Record on Appeal and Response to Appellant's Statement of Issues on Appeal*" [APP ECF No. 4], however, Appellant believes the Trustee is the Appellee as moving party of the MSJ and 9019 Motion.[9]

### SUMMARY OF THE ARGUMENT

The Bankruptcy Court erred in its factual findings regarding the Property's value and, therefore, should have rejected both the Settlement and the 9019 Motion. Instead, the Court erroneously approved a settlement of $400,000—less than fifteen percent (15%) of the Property's fair market value as of November 2023, with payments spread over fifteen (15) months. The Court should have granted the Trustee's MSJ, facilitating a sale of the Property, realizing approximately $2,167,070.00 more for the estate, an increase of 85% over the proposed settlement amount.

### LEGAL ARGUMENT

## I.    THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED

### A.    The Bankruptcy Court Erred in its Factual Findings

In this brief, Appellant asserts that the Bankruptcy Court committed reversible error through a series of missteps in its factual findings that fundamentally impacted the outcome of the case, shorting creditors of at least $2,000,000.00 had the MSJ been granted, and Property sold.

These errors collectively led to a decision that was not only unjust, but also inconsistent with the principles of fairness and equity that guide bankruptcy proceedings. The Court's misinterpretation of evidence, failure to consider relevant facts, and unreasonable inferences

---

[8] On January 17, 2024 the Adversary Case was administratively closed by text entry. All references to this Appeal docket will be referred to as "**APP ECF No.__.**")

[9] It does not appear that the Trustee has filed or designated anything in this Appeal pursuant to Fed. R. Bankr. Proc. 8009.

warrant a thorough review and reversal to order an appraisal to determine the actual value of the Property, and allow the Trustee and Defendant to revisit the terms of a new settlement, or in converse, to order remand the matter and instruct the Bankruptcy Court to grant the MSJ.

The Trustee asserted that pursuant to a comparative market analysis as of January 13, 2023, the Property was valued at $2,359,340.00 reflecting a 17.9% market increase over the prior 12 months ("**Trustee Value**"). [Appx0079;A/P ECF 10-1 ¶ 19;10-3 Ex. E;A/P ECF 20-2 ¶ 11.][10]

Appellant provided an up-to-date comparative market analysis on November 13, 2023, utilizing the same valuation workbook format as the Trustee valuing the Property at $2,567,070.00 on the date of the Hearing, eleven (11) months after the Trustee filed the MSJ ("**Newport Value**"). [Appx0141; A/P ECF No. 23, Ex. A.]

In response, the Defendant provided two valuation options: (1) an appraisal conducted by Ronald A. Curini Appraisal Company, Inc. on August 12, 2022 (fifteen months prior to the Hearing), valuing the Property at $1,795,000.00 ("**Appraisal**") (ECF No. 25-7, Exhibit F pp 56-115); and (2) an email dated January 19, 2023 (eleven months prior to the Hearing), suspiciously reporting a lower valuation of $1,600,000.00. ("**Email Value**," ECF No. 25-5, Exhibit D).[11]

The Settlement represents less than fifteen (15%) of the fair market value of the Property, and with the contemplated quarterly payments spread out over fifteen (15) months without any proof of funds or understanding as to how Defendant expects to make any of the payments, it is speculative at best.  Even taking into consideration the lower Trustee Value of $2,359,340.00,

---

[10] The Trustee's own comparative market actually listed the value at $2,359,340.00 and not $2,107,500.00 as incorrectly stated by the Trustee in his Certifications in support of the MSJ and 9109 Motion. The Trustee reiterated during the Hearing "We used our 2.3 million number" and "the number is what we believe which is the 2.3 million number." [Appx0362; T18; 8; 16-17.].

[11] Notably this Email Value was dated six months *after* the Appraisal in a market that rose 17.9% for the 12 months prior. (*Id*.) Another discrepancy is the Debtor falsely listed the mortgage at $417,000.00 which the Trustee then cited in his Certifications in support of the MSJ and 9019 Motion.  The Property is currently once against jointly titled in the names of the Debtor and Defendant and has an encumbering mortgage balance of $317,000.00 (the "**Mortgage**") confirmed at the Hearing by the Trustee.

minus the Mortgage, the Settlement still only represents 19% of the fair market value of the Property as of the Hearing on November 21, 2023.[12]

At the Hearing, these factual disparities were barely addressed, especially the fact that they were dated between 12-18 months prior to the Hearing which the Bankruptcy Court seemed confused by, and should have never given credence to under the "fair and reasonable" standard:

> THE COURT: And I also noted that there is a number of different appraisals here, right, a number of different values…
>
> MR. KELLY: Well absolutely. And I think that, and as much as the professionals that Ms. Placona had, I believe a number based on, I'm not sure if it was comparative market analysis or some independent research, there was the Trustee's broker with comparative market analysis and then there was the defendant's comparative market analysis. But I would think certainly from the Trustee's perspective, we would have to hire a professional appraiser. I would not come to trial in that type of case, that contested, without an appraiser. And again the settlement avoids all the parties having to do that. Now if Your Honor, if Your Honor was to determine that the settlement doesn't satisfy the sound business judgment test and deny that, you know, then we would ask for a firm date for the summary judgment motion.

[Appx0352; T8-1-19.]

An updated professional appraisal would have costed $750.00 and taken two weeks to complete which Appellant would have gladly paid for. Instead, the Bankruptcy Court was inexplicably content in considering the fraudulent Property value the Debtor listed in his Amended Schedule which was, as stated, his 2009 purchase price of $1,050,000.00:[13]

> MS. PLACONA: No, that's okay. I think this is, I think this is, the valuation, you know, seems to be somewhat of an issue. Because I, again, not to repeat myself, but you can use a, I think $1 million value versus a $2.5 million value, you know, there's different outcomes…So I think again I'm not telling the Court what to do, but

---

[12] According to Newport's Value, there has been a market increase of 9.05% over the past 12 months. Consequently, as of the filing of this Brief, the current property value has increased another $230,000-$250,000 comparatively.

[13] In a further attempt to obfuscate and mislead, the Debtor then filed his Amended Schedules on June 28, 2022 (ECF No. 47), listing the Property's value at a mere $1,050,000.00 on Official Form 106D, Schedule D, Part 1 ("**Amended Schedules**".) This misleading value *actually* represented the purchase price from September 15, 2009 over 14 years prior which the Bankruptcy Court should have never considered.

should we order an appraisal and you know, push out the hearing to determine the appropriate value of the house.

But I still think Your Honor, I think one of the issues is the value of the house. I think it's much higher than obviously, I know you're using one million as a round number. But I think it's been valued at close to 2.5 million today.

[Appx0359; T15:15-23.]

The confusion by the Bankruptcy Court on such an important issue reflecting a variance of over $2,000,000.00 in additional value from a sale should have warranted an appraisal. (*Id.*)

> THE COURT: Well that's what you've --
>
> MS. PLACONA: And I do believe --
>
> THE COURT: Your client who said 2.5. Mrs. Glanton has said one million and the Trustee has said 1.795 million. But what I'm saying is we're not, we're talking about 50 percent of those figures as the top settlement number.
>
> \*   \*   \*
>
> MR. HOFMEISTER: The mortgage that's on there that's I think I provided Mr. Kelly with a statement. It was about 317,000 roughly, so.
>
> THE COURT: This says 470,000, but I think it was 317,000 in your papers.
>
> MR. KELLY: Right, initially the Debtor had listed it at 417,000. But we got the payoff from the bank effective as of the date of the filing. It turned out it was 317,000 and that was factored in and we addressed that in our response.
>
> THE COURT: Right.

[Appx0355; T11: 21-25; 12-1-24.]

Defendant's counsel failed to contest the Debtor's misleading $1,050,000 valuation that the Bankruptcy Court relied on when assessing the Property's value. Similarly, the Trustee did not disclose that this absurd, perhaps phony valuation was actually based on the Debtor's purchase price from 2009 (during the financial crisis when property values were at their lowest) and not the value represented in his Amended Schedules. Furthermore, even Defendant's counsel inadvertently highlighted the necessity of obtaining an updated appraisal, underscoring the inadequacy of the outdated figures represented by the Debtor, contained within the Appraisal, and

reflecting the Trustee's Value:

> MR. HOFMEISTER: So to sit there and use comparatives, it doesn't
> work. You really need an appraisal.

[Appx0358; T14: 4-5.]

Under all scenarios, the disparity between the Settlement amount and the average of the Trustee's Valuation, Newport's Valuation, the current value at the time of filing this Brief, minus the Mortgage still exceeds $2,000,000.00. (*Id.*) Although this discrepancy was not specifically addressed during the Hearing, the Settlement was neither fair nor equitable. It is the Trustee's statutory duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). The Trustee also has a fiduciary obligation to all creditors to "maximize the value of the estate" for their benefit. *In re: Martin*, 91 F.3d at 394 (3d Cir. 1996).

The legal determination to approve the 9019 Motion rather than granting the unopposed MSJ, along with the Bankruptcy Court's inconclusive factual findings regarding the Property's value despite clear and convincing evidence of its current market value at the time of the Hearing, constitutes a significant error. The Bankruptcy Court should never have considered the fraudulent valuation listed by the Debtor in his Amended Schedules—reflecting his purchase price from over 14 years prior—the outdated Appraisal from a year and a half prior to the Hearing, or the Trustee's valuation conducted almost a year prior the Hearing. These considerations represent reversible errors and fail to meet the fair and equitable standard.

As observed by the Third Circuit, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *Will v. Nw. Univ. (In re: Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). Although the Bankruptcy Court referenced the Trustee's business judgment, it should not have done so without a legitimate business

justification for entering into the Settlement based on the actual value, which Appellant provided through clear and convincing evidence current as of the date of the Hearing. *In re: Martin*, 91 F.3d at 395.

The Bankruptcy Court similarly failed in its obligation to carefully examine settlements before approving them by not inquiring about the source of the funds to pay the Settlement.[14] Despite the Trustee raising his own concerns about the funding, the Defendant did not specify the source, and the Trustee's papers in his MSJ and the Rule 9019 Motion did not address this issue. It was only briefly mentioned in a passing comment during the Hearing:

> MR. KELLY: And then the second reason was to sort of force the number up. Because at the end of the day that 400,000 –- we had a number of concerns once we even got to the 400,000. One was funding because if the funding was going to come from post petition earnings by the Debtor, we felt that that would have left estate exposed to a potential fraudulent conveyance action.

[Appx0349;T5: 16-22.]                    *   *   *

> So ultimately I identified her 401(k) as going to be the source of those funds.

[Appx0350;T6: 11-12.]

The Bankruptcy Court blindly relied on the Trustee's "business judgment" yet fell short of the requirement that judges must carefully examine settlements before approving them. The Bankruptcy Court never inquired how a 401(k), without any documentary evidence it even existed or how it was being funded (when the Defendant is working as a paralegal), was going to cover the payment of $80,000.00 per quarter under the financial terms of the Settlement.[15]

> MS. PLACONA:  Second issue is the proof of funds. And I know that the motion stated defendant's going to pay from her 401(k). And

---

[14] The Defendant never presented the Trustee with the source of money to pay the Settlement.  (A/P ECF No. 25-1 ¶ 12) "On April 25, 2023, counsel for Trustee confirmed acceptance of $400,000 to purchase Debtor's co-ownership interest but asserted issues with Defendant's plan to fund the settlement."

[15] *See* Certification of Defendant [A/P ECF No. 25-1 ¶ 31] four days before the Hearing: "After a twelve-year absence from the workplace, Defendant was pressed to accept a position as a paralegal at less than one-third the salary."

maybe I missed it, but I don't think we've seen any proof of financial wherewithal or the funds to be able to pay that or what's in that 401(k).

THE COURT: I guess I didn't worry about that.

[Appx0364;T20: 17-22.]

In *In re: Hechinger Investment Co. of Delaware, Inc.*, 327 F.3d 284 (3d Cir. 2003), the Third Circuit reversed the Bankruptcy Court's decision due to incorrect conclusions and misinterpretation of evidence. The Bankruptcy Court had relied on a flawed interpretation of asset valuations and outdated evidence, leading to erroneous conclusions about the fairness of a settlement. The Third Circuit held that these errors distorted the factual findings and impacted the fairness of the proceedings, thereby warranting reversal of the Bankruptcy Court's decision.

Despite the fact that the Settlement stretched over 15 months, it should have also failed *ab initio* due to its open-ended and unpredictable nature. The Trustee had full unilateral discretion to substantially change, or materially alter, the timeline provisions all to the creditor's detriment:

> "In the event of a default by Defendant in making a quarterly payment, Defendant shall have a 15-day cure period. If no payment has been made and the 15-day cure period has passed, the Trustee shall have sole discretion to sell the Property **or extend the cure period**." [A/P ECF No. 20-2 ¶ 2.]

Given the unprecedented inflation, historically high mortgage rates, property values at peak levels not seen since the 2008 financial crisis, and escalating national debt, coupled with expert warnings of an imminent recession, the current economic climate poses a grave risk of significantly diminishing property values. These factors should have been considered by the Bankruptcy Court. This issue of the open-ended Settlement was justified by the Bankruptcy Court as follows:

> MS. PLACONA: So just two things. I noted that in the event of a default, so there's a 15 day cure period. I think that seems quite extensive. You know, I think a shorter cure period should be in there. But notwithstanding that it says the Trustee has the full discretion to sell the property or extend the cure period. So it doesn't necessarily

15

just get sold. He has the discretion to continue to give the defendant additional time to cure her default.

[Appx0364; T20-8-16.]

> MS. PLACONA: Oh, sorry, thank you Your Honor. I said that everyone wants, everyone keeps bringing attention to the default provision, but I don't read it as clearly as it's being stated. It's not that if there's a default and it's automatic that the house gets sold. There's plenty of comfort built in there, a 15 day cure period and the Trustee can decide to extend that as well. So we can't hang our hats on we're entering into this settlement and there's a default provision to protect if the settlement doesn't go through. I don't think that default provision is that strong to hang the arguments of the settlement on. Thank you Your Honor.

> THE COURT: All right, thank you Ms. Placona. I don't think I agree with you on that last point. I think that the, as long as the Trustee has the control to say I want the house sold, I want to be able to sell the house, which he does have under this settlement, that's good enough for me.

[Appx0366-0367;T22:15-25;T23: 1-12.]

The Trustee filed his MSJ six months prior pursuant to 11 U.S.C. § 363(h) in order to obtain authority to sell the Property with the objective of maximizing its value for the estate. Contrary to this goal, the Bankruptcy Court erroneously concluded that $400,000.00 in questionable payments spread out over 15 months was somehow preferable to an immediate sale of the Property for the mean range of the Trustee Value and Newport Value—a potential increase of at least 85% generating an additional $2,167,070.00 to the estate. (*Id.*) *TMT Trailer*, 390 U.S. at 434, 88 S.Ct. 1157 held that compromises must be "'fair and equitable,'" just as do the "other aspects of reorganizations." *TMT Trailer*, 390 U.S. at 424, 88 S.Ct. 1157. Under the "fair and equitable" standard, we look to the fairness of the settlement to other persons, *i.e.,* the parties who did not settle. *See, e.g., id.* at 435, 88 S.Ct. 1157; *Feld v. Zale Corp.* (*In re: Zale Corp.*), 62 F.3d 746, 754 (5th Cir. 1995).

The Bankruptcy Court's decision was undermined by several critical errors:

1. **Misinterpretation of Evidence**: The Bankruptcy Court relied on evidence that was misinterpreted and failed to consider significant and relevant information, distorting the factual basis of its decision.

2. **Failure to Consider Relevant Facts**: The Bankruptcy Court overlooked essential facts, including a $2,000,000+ variance in Property value and failing to order an appraisal, leading to an erroneous decision in favor of the 9019 Motion instead of the MSJ.

3. **Unreasonable Inferences**: The Court drew unreasonable inferences from the evidence, such as accepting the open-ended Settlement and the Trustee's unsupported claims, resulting in its flawed determination of the 9019 Motion over the MSJ.

**B.      The Settlement Should Not Have Been Approved Under The *Martin* Factors**

In *In re: Martin*, the Third Circuit established four factors for evaluating a Rule 9019 bankruptcy settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation; and (4) the expense and inconvenience of continued litigation. (Id.)  Appellant argues the Bankruptcy Court failed to consider 3 of the 4 primary factors (excluding the second one—ease of collection.)

It is axiomatic that settlements generally reduce the complexity and inconvenience of litigation. *TMT Trailer*, 390 U.S. at 434, 88 S.Ct. 1157 ("Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation."). In the present case, the complexity, expense, inconvenience, and delay typically associated with litigation and *Martin* are non-existent. The matter at hand did not present complex factual or legal issues.  The Bankruptcy Court should have denied the 9019 Motion, granted the MSJ, and the litigation would have

concluded with finality, yielding approximately 85% greater proceeds—totaling around $2,167,070.00—for the estate. (*Id.*)

In fact, the MSJ was unopposed despite being adjourned five times over the span of six months, further solidifying Appellant's position that it should have been granted:

> MR. KELLY:  We carried this summary judgment motion to this day as a control date. If Your Honor turns down the settlement, there was no expectation that this was going to be uncontested. If Your Honor denies approval of the settlement, I'm going to ask the Court to set a date for the summary judgment motion, and a firm date for Mr. Hofmeister to respond. That's due process, which the Court wouldn't have it any other way.

[Appx0360;T16: 8-14.]

*    *    *

> MR. KELLY:  So we filed the summary judgment motion for two reasons; one was to try to bring the case to a head without the need for a trial. The cost of a trial, the risks of a trial, the possibility of a zero recovery for the state if Your Honor ultimately after hearing all witness testimony and concerning all pre and post trial submissions ultimately sided with Mr. Hofmeister's client which, you know, hard for me to put a percentage on it but I wouldn't put a zero percent on it.

[Appx0360; T16: 8-14.]

*    *    *

> A summary judgment motion under 363(h)(3)…we're that supremely confident without waiving anything that we were going to prevail on summary judgment.

[Appx0351;T7:7-11.]

Newport is the only first position secured creditor of the Debtor's estate, however, the Trustee has a fiduciary relationship with all creditors of the estate. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 354-55 (1985); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 701 (3d Cir. 1993).  For all of these reasons set forth above, the Settlement was not fair and equitable, does not satisfy the *Martin* factors, and should not have been approved, when granting the concurrent MSJ would have resulted in at least $2,167,070.00 more immediately for the estate.  (*Id.*)

18

## II.    **THE DEBTOR AND DEFENDANT ENGAGED IN A FRAUDULENT TRANSFER**

### A.    **Tenancy by the Entirety Was Broken**

The Bankruptcy Court previously found good cause existed to convert the Debtor's bankruptcy from a Chapter 11 to a Chapter 7, as well as "cause" under Section 1112(b)(1) and (4) of the Bankruptcy Code to appoint the Trustee based upon evidence of fraud, dishonesty, incompetence and gross mismanagement. This determination, along with other factors, was based upon the Debtor's intentionally fraudulent act of transferring his interest in the Property to the Defendant for one dollar ($1.00)—fifty-four (54) days before his Petition Date under the guise of what the Debtor explained was for "estate planning." (*Id.*) It is unequivocal that this act was perpetrated "with actual intent to hinder, delay or defraud" creditors. 11 U.S.C. § 548(a)(1).[16]

In support of the MSJ, the Trustee's Certification summarized the chronology:

At the initial Meeting of Creditors on March 17, 2022, conducted by Alexandria Nikolinos, Esq. of the Office of the U.S. Trustee, the Debtor testified that he was married to the Defendant and claimed not to own any real property.  [A/P ECF No. 10-3 at ¶¶ 4]

However, he later admitted to having owned the Property with the Defendant within the prior two years of the Petition Date and stated that he transferred his ownership to the Defendant in November or December 2021. (*Id.* ¶ 5.) On June 28, 2022, the Debtor filed Amended Schedules listing an ownership interest in the Property. (*Id.* ¶ 6.)

A property search on October 11, 2022, revealed recorded deeds showing two transfers of the Property between the Debtor and Defendant: to the Defendant on December 13, 2021, and back to the Debtor on August 5, 2022. (*Id.* ¶ 7.)

Pursuant to a comparative market analysis obtained by the Trustee dated January 13, 2023, the Property is worth approximately $2,107,500. (*Id.* ¶ 9.)

Based upon this information there is substantial equity in the Property to be realized by a sale of the entire Property and to be shared between the Debtor's chapter 7 bankruptcy estate and Defendant. (*Id.* ¶ 10.)

---

[16] This is further evidenced by the Debtor's intentional and deliberate failure to list Appellant as a creditor or notify Appellant that the BK Case was even filed. This misconduct is further compounded by the fact that, on July 13, 2017, the Debtor previously filed for bankruptcy in the same court (Case No. 17-24279-CMG) ("**1st BK Case**"), listing Appellant as his largest and only secured creditor on every petition and schedule.

> Since the Property is a single-family residence, partition in kind of the Property between Debtor's estate and Defendant is impracticable and a sale of the estate's undivided interest in the Property would realize significantly less for the estate than would a sale free of the interest of Defendant. (*Id.* ¶ 11.)

The Trustee asserts that he met the statutory requirements under *In re: Olsen*, 14-11273, 2017 WL 3311218, at *6 (Bankr. D.N.J. July 20, 2017), by showing that he holds an undivided one-half interest in the Property, based on the Debtor's undivided one-half interest as a joint tenant at the commencement of the BK Case. Appellant contends otherwise, arguing that the Defendant should not have any interest in the Property because tenancy by the entirety was broken.

Section 363(h) permits the Trustee to sell both the estate's interest and the interest of any co-owner in property where the debtor held an undivided interest as a tenant in common, joint tenant, or tenant by the entirety at the case's commencement. *In re: Caola*, 422 B.R. 13 (Bankr. D.N.J. 2010), is directly applicable, as it involved a fraudulent transfer of the debtor's interest in his home to his wife.  Section 17.4 of New Jersey Statutes Annotated ("**N.J.S.A.**") 4:3 states, "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses." "Section 17.4 is clear and unambiguous[] '[n]either spouse' may affect 'their interest' in the tenancy by the entirety." N.J.S.A. 46:3-17.4; *In re: Weiss*, 638 B.R. 543 (Bankr. D.N.J. 2022).

The situation in this case is particularly egregious due to the coordinated nature of the transfers between the Debtor and Defendant, both of whom consented to each transfer in writing.

> MR. KELLY: First of all the deed transfer issue and it no longer being a tenancy by the entirety, Newport and the Trustee I believe are in agreement on that. Mr. Hofmeister has contested that. I don't think after seeing everybody's responses, I did the research and I did two things. First I looked at 363(h). 363(h) does not distinguish for (a)(3) purposes of necessity that the Court determine benefit versus detriment, as long as the property is owned tenancy by the entirety or joint 2 tenants or tenants in common. In all likelihood the Trustee believes the property is presently tenants in common, not tenancy

by the entirety. I was hoping, when I did the research, that there would be a distinction that if it wasn't tenancy by the entirety, the Court didn't have to do the benefit/detriment analysis. Because if that was the case, if the loss of the tenancy by the entirety protection was going to change the Court's analysis under (h)(3) the Trustee would then have a much stronger argument on summary judgment.

[Appx0360; T16:18-25;17:1-11.]

At the Hearing, the Trustee barely commented on the critical issue of who holds the legal right to the Property's value within the estate, downplaying its significance.

MR. KELLY: So while there was a huge focus on the loss of the tenancy of the entirety protection, that is irrelevant. Your Honor doesn't have to decide that issue, whether the Trustee and Newport are right or whether the defendant is right, because it's irrelevant.[17]

[Appx0361;T17:25;18:1-4.]

Despite comprehensive briefing by the Appellant, the Bankruptcy Court failed to address this pivotal issue entirely, constituting an abuse of discretion. A district court has the authority to reverse a bankruptcy court's order if the bankruptcy court neglects to address a significant issue presented during the proceedings. This failure can be deemed an abuse of discretion or a legal error, particularly if the unaddressed issue materially impacts the outcome of the case as it did here. (*Id*.) An abuse of discretion occurs when a decision is based on an incorrect understanding of the law or neglects to consider relevant facts. Similarly, an error of law arises when the bankruptcy court does not apply the correct legal standards or fails to address critical arguments. Under these circumstances, a district court reviewing an appeal may reverse or remand the bankruptcy court's decision for further proceedings.

In *In re: Poplar Forest, Inc.*, 324 B.R. 88 (Bankr. D.N.J. 2005), the Bankruptcy Court's failure to address significant arguments and issues raised by the parties was deemed an abuse of

---

[17] On April 5, 2022, the Debtor and Defendant filed a Certification and Stipulation (ECF No. 22) following the Meeting of Creditors acknowledging that the Property constitutes estate property. This filing was part of a strategy to seek dismissal of the bankruptcy case rather than converting it under Chapter 7.

discretion. The District Court reversed the Bankruptcy Court's order, emphasizing that ignoring material issues could lead to reversible error if it substantially affects the fairness and correctness of the decision.

### B.    Once Tenancy by the Entirety is Broken, It Cannot Be Revived

A tenancy by the entirety is a form of joint ownership where property is held by a husband and wife, each possessing the entire estate. *N.T.B. v. D.D.B.*, 442 N.J. Super. 205, 218 (App. Div. 2015) (quoting *Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi*, 389 N.J. Super. 219, 227 (Ch. Div. 2006)). In 1987, the New Jersey state legislature enacted statutes governing tenancies by the entirety, which took effect on April 4, 1988. These statutes, codified at N.J. Stat. §§ 46:3–17.2 to 46:3–17.4, apply to tenancies created on or after this date. *Vander Weert v. Vander Weert*, 304 N.J. Super. 339, 700 A.2d 894, 897 (App. Div. 1997). Specifically, N.J. Stat. § 46:3–17.2 outlines that a tenancy by the entirety is established when a husband and wife take title to property under a written instrument that names both spouses as husband and wife.

The five requirements for tenancy by the entirety are: (1) Unity of time; (2) Unity of marriage; (3) Unity of title; (4) Unity of interest; and (5) Unity of possession. *In re: Cosper*, 106 B.R. 377, 380 (Bankr. M.D. Pa. 1989). Property transferred out of a tenancy by the entirety estate pre-petition does not revert to a tenancy by the entirety upon avoidance. *In re: Swiontek*, 376 B.R. 851, 867 (Bankr. N.D. Ill. 2007). During the Hearing, the Trustee downplayed the Debtor and Defendant's blatant attempt to conceal their misconduct, suggesting it was not a significant issue:

> MR. KELLY:  We used our 2.3 million number and we did our analysis that Mrs. Glanton under every theory you can look at, still has a 50 percent interest. The post petition transfer of a house back to the two names frankly saved everybody work because otherwise we would have had to have filed a fraudulent conveyance action. That was mooted by that.

[Appx0362; T18:8-14.]

In *Paulsen v. Olsen*, 3:22-cv-50111 (N.D. Ill. Nov. 20, 2023), the Debtor James Paulson argued that he did not re-title his share of the residential property into tenancy by the entirety to cheat his creditors, but **rather** for "estate planning" purposes.[18]  As it so often does, this argument went nowhere, with the District Court agreeing with the Bankruptcy Court that these claims by the Paulsen's were "little more than after-the-fact concoctions" made for the purpose of avoiding the "sole intent" language of the Illinois statute.  *Paulsen*, 2023 WL 8019393 *13.

In *Swiontek*, the court ruled Swiontek had transferred the assets with the actual intent to hinder, delay, or defraud his creditors. The court analyzed various factors indicating fraudulent intent, such as the timing of the transfers relative to the bankruptcy filing and the lack of consideration received in return for the transferred assets.   As such, the Trustee's avoidance of the transfer to the Defendant did not result in a reversion to a tenancy by the entirety. *Swiontek*, 376 B.R. at 864.

Upon establishing the transfer is fraudulent under Section 548 of the Bankruptcy Code, the Trustee can put the Property back into the estate to be distributed to the creditors. 11 U.S.C. § 544. The Bankruptcy Code allows a court to rely on the governing state law fraudulent transfer statutes, if they are more beneficial to the creditors than those provided by the Bankruptcy Code. 11 U.S.C. § 544. The New Jersey Uniform Fraudulent Transfer Act (the "**NJUFTA**") lets creditors ultimately challenge and void the transfer of money, property or assets made by a debtor if the transfer has the effect of placing the money, property or assets out of the reach of present and sometimes future creditors.  <u>See</u> N.J.S.A. §§ 25:2-20 – 25:2-34. NJUFTA makes the following types of transfers fraudulent in New Jersey: (1) A transfer made with the actual intent to hinder, delay or defraud

---

[18] This was identical to the bogus claims Glanton made in the BK Case: "In December 2021, two months before this case was even filed, I as the Debtor made an Estate Planning transfer of my 50% interest in our family home to my wife. I am 75 years old, and that is a common-place estate planning decision made by people my age, and that allegation by the Movant is nothing more than a tempest in a teapot." ECF No. 30; Debtor's Certification.

one's creditors; (2) A transfer made by a business without receiving a reasonably equal value in exchange and which leaves the business with money, property and assets worth less than their debts; (3) A transfer without receiving a reasonably equal value in exchange, knowing (or should have known) at the time of the transfer that he/she would incur debts in the future beyond his/her ability to pay them. *See also* N.J.S.A. 25:2-25; N.J.S.A. 25:2-27; *Gilchinsky v. National Westminster Bank N.J.*, 732 A.2d 482, 488, 159 N.J. 463 (N.J. 1999).

When evaluating the circumstances of a transaction, courts have relied on "badges of fraud" that include: (1) the relationship between the debtor and the transferee; (2) consideration for conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor; and (6) secrecy or concealment of the transaction. *Moody v. Sec. Pacific Bus. Credit, Inc.*, 127 B.R. 958, 991 (Bankr. W.D. Pa. 1991); *In re: Otis Edwards, P.C.*, 115 B.R. 900, 913 (Bankr. E.D. Mich. 1990).[19] The Defendant's act of deeding a one-half (50%) interest back to Debtor three (3) months post-petition was not mooted, irrelevant, and did not restore tenants in their entirety as the Trustee contends.

### C.    The Mortgage, if it Still Exists, is Voidable as a Fraudulent Conveyance

Under the Federal Rules of Bankruptcy Procedure, an adversary proceeding is required to recover property and to determine the validity, priority, or extent of a lien or other interest in property (Fed. R. Bankr. P. 7001(1)-(2)). A mortgage may be voided as a constructively fraudulent conveyance under the New Jersey Uniform Fraudulent Transfer Act ("**NJUFTA**"). Specifically, N.J.S.A. 25:2-27(b) and N.J.S.A. 25:2-22(a) state that a transfer of property to an "insider" is considered constructively fraudulent if it was made for an antecedent debt, the debtor was insolvent

---

[19] The New Jersey Supreme Court has held that courts must look to the established "badges of fraud" when determining whether facts give rise to intentional fraud. *Gilchinsky v. Nat'l Westminster Bank N.J.,* 159 N.J. 463, 476, 732 A.2d 482, 489 (1999).

at the time of the transfer, and the insider had reasonable cause to believe in the debtor's insolvency.

In this context, the $317,000.00 mortgage from PNC Bank could be deemed voidable as a fraudulent conveyance unless it meets specific exceptions under N.J.S.A. 25:2-30(f). These exceptions include: (1) if the insider provided new value to or for the benefit of the debtor after the transfer, unless the new value was secured by a valid lien; (2) if the transfer was made in the ordinary course of business or financial affairs of both the debtor and the insider; or (3) if the transfer was part of a good-faith effort to rehabilitate the debtor and secured present value given for that purpose as well as an antecedent debt of the debtor.

Since none of these exceptions apply in the present case, as supported by the case law in *In re: Century City, Inc.*, 8 B.R. 25 (Bankr. D.N.J. 1980), Appellant argues that the tenancy by the entirety has been broken and cannot be restored. Therefore, the proceeds from the sale of the property should be allocated entirely to the debtor's estate.

## CONCLUSION

Based on the foregoing, Appellant respectfully requests that this Court reverse the Bankruptcy Court's Order approving the 9019 Motion and remand the matter with instructions to grant the MSJ.  Or alternatively, remand the matter with instructions to conduct an appraisal to determine the accurate value of the Property which Appellant will pay for.  Once concluded, Defendant will have an opportunity to propose a settlement that reflects the Property's actual value. Furthermore, Appellant respectfully requests that the Court determine that any proceeds from a settlement or sale of the Property go entirely to the estate since tenants in the entirety was broken due to the pre-petition fraudulent transfer of the deed to the Defendant, and that the act of re-transfer back post-petition did not restore it.

///

**McMANIMON, SCOTLAND &
BAUMANN, LLC**
*Counsel to Appellee Newport Investment
Group, LLC*

By: _____*/s/ Sari B. Placona*_____
　　　　　SARI B. PLACONA

Dated: August 19, 2023

<u>**CERTIFICATION OF COMPLIANCE**</u>

Pursuant to Fed Rule 8015(H), I hereby certify that this brief complies with the word limit requirement set forth by the Court. The total number of words in this brief, excluding the cover page, table of contents, table of authorities, and certificate of service, is 8,274. I relied on Microsoft Word 365 to count the number of words.

**McMANIMON, SCOTLAND &
BAUMANN, LLC**
*Counsel to Appellee Newport Investment
Group, LLC*

By: _____*/s/ Sari B. Placona*_____
　　　　　SARI B. PLACONA

Dated: August 19, 2023