NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RICHARD HOWARD GLANTON,<br><br>Debtor.<br><br>---<br><br>NEWPORT INVESTMENT GROUP, LLC, *et al.*,<br><br>Appellant,<br><br>v.<br><br>JOHN M. MCDONNELL, TRUSTEE FOR DEBTOR ESTATE OF RICHARD HOWARD GLANTON,<br><br>Appellee-Plaintiff,<br><br>and<br><br>EILEEN CANDIA, A/K/A EILEEN GLANTON,<br><br>Appellee-Defendant. | Bankruptcy Action No. 22-11055 (CMG)<br><br>Adversary Proceeding No. 22-1335 (CMG)<br><br><br><br><br><br>Civil Action No. 23-22912 (RK)<br><br>**OPINION** |

    **THIS MATTER** comes before the Court upon Newport Investment Group LLC's ("Newport" or "Appellant") appeal (ECF No. 1)[1] from the Bankruptcy Court's approval (Bankr. ECF No. 26) of a settlement under Federal Rule of Bankruptcy Procedure ("Rule") 9019 between

---

[1] References to "ECF No. __" refer to documents filed in this present appeal. References to "Bankr. ECF No. __" refer to documents filed in the adversarial proceeding in Bankruptcy Court that precipitated the settlement agreement at issue, *McDonnell v. Candia (In re Glanton)*, No. 22-1335 (Bankr. D.N.J.). Documents filed on other dockets are listed alongside a complete case citation (*e.g.*, *In re Glanton*, No. 22-11055 (Bankr. D.N.J.), ECF No. __.).

John M. McDonnell ("Trustee"), Chapter 7 Trustee for Estate of Richard Howard Glanton ("Glanton" or "Debtor"), and Eileen Candia A/K/A Eileen Glanton ("Candia" or "Appellee"), on November 21, 2023. This appeal was filed on December 6, 2023, (ECF No. 1), and the record of appeal was designated pursuant to Rule 8009(a) on December 19, 2023, (ECF No. 2). Appellant filed its operative brief on August 30, 2024, (ECF No. 13 ("App. Br.")),[2] and Appellee responded on September 18, 2024, (ECF No. 14). Appellant did not file a reply brief; Trustee did not file any briefing or otherwise participate in this appeal.

The Court has considered the parties' submissions and resolves these matters without oral argument pursuant to Rule 8019. After carefully considering the parties' submissions and, for the following reasons, the Court **AFFIRMS** the Bankruptcy Court's Order.

I. BACKGROUND

This bankruptcy appeal is brought by one of the bankruptcy estate's largest creditors, Newport Investment Group, LLC. Newport seeks reversal of a settlement approved by the Bankruptcy Court, which, in large part, sold the entirety of the estate's interest in the Debtor's primary residence to the Debtor's wife. Appellant argues that the settlement falls below the "range of reasonableness" for an appropriate settlement because, allegedly, the consideration paid to the estate by the Debtor's wife is significantly below what the estate might have received through alternative disposition.

With respect to the broader bankruptcy matter, the Court assumes that the parties are familiar with its factual background and will not be exhaustive in recounting the protracted

---

[2] On August 19, 2024, after nearly eight months and multiple deadline extensions, Appellant filed its opening brief. (ECF No. 10.) Eight days later, Appellant filed a letter to the Court stating that Appellant filed the "wrong version" of its brief and requesting leave to file a "corrected version" that would add six pages. (ECF No. 11.) On August 30, the Court granted Appellant's request (ECF No. 12), and Appellant filed a new brief that included a new argument that did not appear in the original brief. (*See* ECF No. 13.) The Court considers Appellant's latest submission herein. (ECF No. 13.)

bankruptcy proceedings and multiple ancillary adversary proceedings. *See, e.g.*, *In re Glanton*, No. 22-11055 (Bankr. D.N.J.); *In re Glanton*, No. 22-1388 (Bankr. D.N.J); *Glanton v. Newport Inv. Grp.*, No. 23-3868 (D.N.J.). This matter began in the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") in February 2022 when Debtor filed a voluntary petition for Chapter 11 Bankruptcy. (*In re Glanton*, No. 22-11055 (Bankr. D.N.J.), ECF No. 1.) On June 7, 2022, Appellant filed a proof of claim for $7,186.756.38. (App. Br. at 7; *see also Glanton v. Newport Inv. Grp., LLC (In Re Glanton)*, No. 23-3868 (D.N.J.), ECF No. 25.) On August 30, 2022, the Honorable Christine M. Gravelle, U.S.B.J. granted a motion to convert the case to Chapter 7 Bankruptcy. (*In re Glanton*, No. 22-11055 (Bankr. D.N.J.), ECF No. 68.) On August 31, 2022, John Michael McDonnell was appointed as Chapter 7 Trustee. (*In re Glanton*, No. 22-11055 (Bankr. D.N.J.), ECF No. 95.)

Among other avenues to manage the bankruptcy estate's debts, Trustee sought to sell the home that Debtor and Appellee share together as a married couple and purport to co-own (*see* Bankr. ECF No. 1 ("Compl.") ¶ 12(b)), located at 26 Snowden Lane in Princeton, New Jersey (the "Property"). On October 12, 2022, Trustee filed an adversary proceeding against Appellee (*see* Compl.) asking the Bankruptcy Court to authorize Trustee to sell the Property "free and clear of the interest of the co-owner," Debtor's wife, Appellee. (*See* Compl. at 4.) The Trustee brought the case under a single cause of action, invoking Section 363(h) of the Bankruptcy Code, which allows a trustee to "sell both the estate's interest . . . *and the interest of any co-owner in property*," 11 U.S.C. § 363(h) (emphasis added), so long as, in relevant part, (1) the partition of the Property between the estate and co-owners in impracticable, (2) the sale of the estate's interest would realize significantly less for the estate than sale of such property free of the interests of the co-owners,

and (3) the benefit to the estate of a sale of such property free of the interests of the co-owners outweighs the detriment to the co-owners. *See id.*

On January 12, 2023, the Bankruptcy Court ordered Trustee and Appellee to participate in a mediation in front of Morris S. Bauer, Esq. (Bankr. ECF No. 8.) The two parties attended a day-long mediation with Mr. Bauer on February 23, 2023, and subsequently "engaged in a months-long process to resolve the adversary proceeding." (ECF No. 14 at 2.) The mediation process was ultimately unsuccessful in resolving the § 363(h) claim. (*Id.*) Resorting back to the adversarial process, Trustee filed a Motion for Summary Judgment on May 25, 2023. (Bankr. ECF No. 10-2 ("MSJ").) Trustee argued that, under the § 363(h) analysis, the benefit to the estate of selling the entire interest in the house outweighed any detriment to the Debtor's wife from the same. (MSJ at 4-5.) Trustee's MSJ also asserted that the Debtor "owned an undivided one-half interest as a *joint tenant* at the time of the commencement" of his bankruptcy case. (MSJ at 5) (emphasis added); *see also In re Olsen*, No. 15-1877, 2017 WL 331218, at *8 (Bankr. D.N.J. July 20, 2017) ("The key requirement [of Section § 363(h)] is that the debtor 'have an undivided interest as a tenant in common, *joint tenant*, or tenant by the entirety' as of the petition date." (emphasis added) (quotation omitted)).

Appellee never filed a response to the Motion for Summary Judgment. Instead, between May and October 2023, Trustee and Appellee engaged in prolonged settlement discussions and repeatedly sought adjournment of any hearings on the Motion for Summary Judgment. (*See* Bankr. ECF Nos. 11, 15, 16, 17, 20.) After finally reaching an agreement concerning the Property, Trustee filed a Motion to Approve Settlement under Rule 9019 (the "Settlement" or "Settlement Agreement") on October 17, 2023. (Bankr. ECF No. 20.) Appellee supported the Settlement. (Bankr. ECF No. 25.) The proposed agreement included, in relevant part, the following terms:

- In exchange for the estate's interest in the Property, Appellee shall pay the Trustee a total of $400,000 in five quarterly payments of $80,000 each.

- "In the event of a default by [Appellee] in making a quarterly payment, [Appellee] shall have a 15-day cure period. If no payment has been made and the 15-day cure period has passed, the Trustee shall have sole discretion to sell the Property or extend the cure period. If the Property is sold, the Trustee will retain 50% of the net proceeds and 50% of the net proceeds will be paid to [Appellee]. The net proceeds to be received by the Trustee shall be reduced dollar-for-dollar by the total amount of any payments made in satisfaction of the Settlement Sum by [Appellee] prior to default."

- "In the event the Trustee sells the Property after a default by [Appellee] in making quarterly payments as permitted in this Settlement, the Trustee shall be permitted to list the Property with a broker of his choice and a commission structure of his choosing (subject to Bankruptcy Court approval of the broker and recommended commission structure) and at a minimum price by the Trustee in his sole discretion."

(Bankr. ECF No. 20-2 at 2). As required by Rule 9019, Trustee also issued notice to all creditors, notifying them of the proposed Settlement. (Bankr. ECF No. 21.)

On November 14, 2023, Newport Investment Group, LLC, one of the creditors and the Appellant here, objected. (Bankr. ECF No. 23.) Newport's objection, which largely tracks its arguments on appeal before this Court, asked the Bankruptcy Court to deny the proposed settlement and instead grant the pending Motion for Summary Judgment, which remained unopposed.[3] (*Id.* at ¶¶ 16–21.) The Bankruptcy Court held a hearing on November 21, 2023, where it heard arguments and asked questions of the representatives for the Appellant, Trustee, and Appellee with respect to the Settlement. (*See* Bankr. ECF No. 36 ("Hearing Tr.").) The Bankruptcy Court found that the proposed Settlement was "certainly within the bounds of reasonableness," and approved it. (Bankr. ECF No. 26; *see also* Hearing Tr. at 24:12–13.) This appeal followed.

---

[3] Counsel for Trustee, on the record, reasonably explained that he wanted to first allow the Bankruptcy Court to approve settlement, which, if granted, would moot the motion for summary judgment. (*See* Hearing Tr. at 16:8–16.) Counsel stated that if the Bankruptcy Court denied the settlement, however, he would "ask the Court to set a date for the summary judgment motion, and a firm date for [Appellee's counsel] to respond. That's due process, which the Court wouldn't have any other way." (Hearing Tr. at 16:11–14.)

## II.    LEGAL STANDARD

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). A bankruptcy court's factual findings are reviewed for clear error. *In re Smith*, 102 F.4th 643, 657 (3d Cir. 2024*)*. Legal conclusions, in contrast, are subject to plenary review. *See In re Gilbert*, 120 F.4th 114, 121 (3d Cir. 2024) *amended* Nov. 1, 2024 ("We review without deference the Bankruptcy Court's legal analysis.").

When the bankruptcy court has exercised discretion in making a determination, such as when approving a proposed settlement, an abuse of discretion standard applies. *In re Hudson's Coffee, Inc.*, No. 08-5133, 2009 WL 1795833, at *2 (D.N.J June 22, 2009) (citing *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)). "This standard is 'at root a deferential standard of review,' and the district court 'should not disturb an exercise of discretion unless there is a definite and firm conviction that the [bankruptcy] court . . . committed clear error of judgment in the conclusion it reached upon weighing the relevant factors.'" *Id.* (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006)). As such, a bankruptcy court "abuses its discretion only if no reasonable person could take the view it adopted." *In re Cortuk*, No. 22-1690, 2022 WL 17361623, at *1 (D.N.J. Dec. 1, 2022) (quotation omitted). However, when determining whether a bankruptcy court "applied the proper test in approving the settlement[,] we review *de novo*." *In re Nutraquest*, 434 F.3d at 644 (citing *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002)).

### III. DISCUSSION

At issue here is whether the Bankruptcy Court abused its discretion in approving the Settlement Agreement under Rule 9019 in which the Trustee sold the estate's interest in the Property to Appellee for $400,000. Appellant argues that the Bankruptcy Court erred by not adequately considering the *Martin* factors, *see* 91 F.3d at 393, undervaluing the Property, and ignoring an allegedly fraudulent transfer of the Property between Debtor and Appellee that altered the Property's ownership status. (*See* App. Br. at 10–24.) The Court finds no merit in these contentions. Not only did the Bankruptcy Court thoroughly and adequately consider Appellant's objections at the November 2023 settlement approval hearing, but the decision to affirm the settlement itself was not a "clear error of judgment." *In re Nutraquest, Inc.*, 434 F.3d at 645. Although Appellant also urges this Court—sitting on appeal—to grant Trustee's Motion for Summary Judgment (Bankr. ECF No. 10.), that Motion remains moot under the Court's decision to affirm the Bankruptcy Court's decision and, thus, is not addressed here.[4]

#### A. CONSIDERATION OF THE *MARTIN* FACTORS

When determining whether to approve a settlement, the Third Circuit has instructed bankruptcy judges to "assess and balance the value of the claim that is being compromised against the value to the estate of the compromise proposal." *In re Martin*, 91 F.3d at 393. In conducting this balancing analysis, a court should consider four criteria: "(1) the probability of success in

---

[4] Appellant petitions this Court to reverse the Bankruptcy Court's order approving the proposed Settlement Agreement *and* instruct the Bankruptcy Court to grant the previously-pending Motion for Summary Judgment. (App. Br. at 25.) Appellee argues that granting the Motion before she has had a chance to fully respond to it would "effectively subvert established procedures and undermine the integrity of the judicial process." (ECF No. 14 at 6–7.) Neither party cites legal authority for its respective positions regarding whether the Motion even could be granted at this stage of the proceedings. However, because this Court is satisfied that the Bankruptcy Court did not abuse its discretion in approving the settlement, the Court need not disturb the Bankruptcy Court's determination that the Motion is moot. (Bankr. ECF, Docket Entry dated November 21, 2023.)

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* A bankruptcy judge need not explicitly mention the *Martin* case nor analyze the factors in rote fashion, so long as "the record reflects that the [b]ankruptcy [c]ourt applied the relevant factors." *In re Decade, S.A.C., LLC*, No. 18-1880, 2020 WL 564903, at *4 (D. Del. Feb. 5, 2020); *see also In re Summit Metals, Inc.*, 477 F. App'x 18, 22 (3d Cir. 2012) (deciding not to remand even when it "might cause the Bankruptcy Court to more explicitly tailor its analysis to the *Martin* factors, [because the court sitting on appeal was] confident that the outcome would remain unchanged").

Here, the Bankruptcy Court, in citing *Martin* and clearly referencing its factors, properly considered the *Martin* framework by assessing the risks and benefits to the estate, despite not walking through each of the *Martin* factors in any specific order.. (Hearing Trans. at 23:25–24:16.); *see also In re Summit Metals, Inc.*, 477 F. App'x at 21 (concluding that a trustee, in his business judgment, must undertake a "cost benefit analysis" in determining what will maximize value for the creditors).

1. Probability of Success and Expense, Inconvenience, or Delay in Litigation

Appellant contends that the Bankruptcy Court never considered the probability of success in litigation (first *Martin* factor) or the expense, inconvenience, or delay in attending to litigation (third *Martin* factor), because the Bankruptcy Court could have granted the "unopposed" Motion for Summary Judgment, thereby avoiding further litigation altogether. (App. Br. at 17 ("The complexity, expense, inconvenience, and delay typically associated with litigation and *Martin* are non-existent.").) But granting the Motion for Summary Judgment was not as much as a foregone conclusion as Appellant contends. The Bankruptcy Court heard argument from Trustee about the

8

likelihood that Trustee would succeed on the merits of the Motion for Summary Judgment, and the combined costs associated with briefing the Motion or potentially preparing for trial. (*See* Hearing Tr. at 18-19.) Appellee explained that, although she had not yet filed an opposition to the Motion because settlement was ongoing, she would certainly fight the Motion were the Settlement not approved. (*See id.* at 14:12–19.) Trustee even conceded the possibility that the Bankruptcy Court could find an issue of material fact that would require resolution at trial. (*See id.* at 18:19–23.) Additionally, the estate could have lost at trial and been precluded from selling the house, thereby recovering nothing at all for the estate. (*See id.* at 5:6–15, 18:24–25.) Contrary to Appellant's contentions, the Bankruptcy Court found that the threat of continued litigation was anything but "nonexistent."

Settlement, on the other hand, avoids these potential consequences, brings finality to the adversarial proceeding, and provides a guaranteed recovery for the estate. *See In re O'Grady*, Nos. 20-18906, 21-16401, 2022 WL 1058379, at *5 (D.N.J. Apr. 8, 2022) (weighing the third *Martin* factor in favor of settlement because "further litigation . . . would have resulted in substantial time and expense, unnecessary depletion of the estate and potentially extinguished any remaining equity. The settlement avoided these consequences and brought finality."). In approving the Settlement Agreement, the Bankruptcy Court considered the first and third *Martin* factors and found that the benefit to settling outweighed the risk of not settling, spending more time and resources litigating, and recovering potentially nothing for the estate if the estate were not authorized to sell the co-owned Property under § 363(h).

2. Likely Difficulties in Collection

Appellant further contests the Bankruptcy Court's findings under the second *Martin* factor: "the likely difficulties in collection." *In re Martin*, 91 F.3d at 393. Appellant concedes, however,

that the Bankruptcy Court *did* consider this factor at the hearing. (App. Br. at 17 (arguing that "the Bankruptcy Court failed to consider 3 of the 4 primary factors (excluding the second one—ease of collection")).) Still, Appellant argues that the Bankruptcy Court did not reasonably weigh provisions of the Settlement Agreement that might make collection more difficult. (*Id.* at 15.) In particular, Appellant contends that (1) the Bankruptcy Court did not verify that Appellee had access to the necessary funds in her 401(k) to buy out the Debtor's interest in the home, (2) the Agreement provided a "quite extensive" 15-day cure period to complete the necessary payments, (Hearing Tr. at 20:9), and (3) the Trustee could "in his sole discretion," "extend the cure period," (Bankr. ECF No. 26 at 4). The Bankruptcy Court, however, *did* carefully consider whether these provisions of the Settlement Agreement might make collection difficult, explaining that it "had that question too . . . when [it] was reviewing" the Agreement. (Hearing Tr. at 20:22–25.) Nevertheless, it concluded, and this Court agrees, that the Agreement provides an entirely reasonable mechanism for resolving difficulties with collection: if Appellee does not make the requisite payments and fails to cure, Trustee has "the sole discretion to sell the Property." (Bankr. ECF No. 26 at 4.) This clause acts as a failsafe, providing Trustee with the remedy he initially sought in his Complaint under 11 U.S.C. § 363(h): the ability to sell the entire Property, including the interest of non-debtor co-owner. The Bankruptcy Court found, therefore, that collection would not be difficult.

3. Paramount Interest of the Creditors

As for the fourth *Martin* factor, the "paramount interest of the creditors," the Bankruptcy Court found that the settlement amount would provide sufficient value to the estate's creditors, including Appellant, despite the fact that Appellant disagreed with Trustee and Appellee as to the proper value of the Property. (Hearing Tr. at 24:5–27.) The Settlement Agreement requires

Appellee to pay Trustee $400,000 over five quarterly installments. (Bankr. ECF No. 26 at 4.) Appellant contends that the Bankruptcy Court erred in approving the settlement in part because the settlement is too low relative to the "up-to-date" valuation of the Property, which it purports to be $2,567,070. (Br. App. at 10.) Over the course of the bankruptcy and adversarial proceedings, Appellant, Appellee, and Trustee together submitted at least seven valuations of the Property, ranging from $1.6 million (Bankr. ECF No. 25-5), to approximately $2.567 million, (Bankr. ECF No. 23-1). Of these seven valuations, four came from comparative market analyses, one came from Debtor's Amended Schedules, one came from a statement from the local tax assessor, and one came from a property appraisal. (*See* ECF No. 14 at 11.) Although the designated record is replete with various valuation calculations and both parties on appeal spent a significant number of briefing pages discussing the appropriate value of the Property, this Court's role is not to conduct a quantitative analysis of the potential valuation, but only to assess whether the Settlement as a whole was below the range of reasonableness. Appellant has provided no authority to support its argument that the Bankruptcy Court must make a finding as to the precise property value as part of its *Martin* analysis.

It is clear that the Bankruptcy Court reasonably relied on the Trustee's thorough and thoughtful calculations to arrive at the final settlement amount. Appellee's briefing, as well as counsel's representation on the record, demonstrate that the Settlement, which required Appellee to pay $400,000 to Trustee for Debtor's 50% share of the property, was based on a number of logical assumptions: *First*, The trustee relied on a property valuation of $2.3 million as a starting point, (Hearing Tr. at 18:8), which approaches Appellant's highest valuation. *Second*, Trustee calculated that if the case were to go to trial, the estate could ultimately collect up to $700,000, a figure that subtracts Appellee's 50% share of the property and an outstanding mortgage on the

property. (*Id.* at 18:15–18.) *Third*, the Trustee factored in the possibilities that Trustee could lose at both summary judgment and at trial. (*Id.* at 18:19–23.) The Bankruptcy Court agreed. (*See id.* at 18:24–25 ("THE COURT: And if you lose, you get zero. It's all or nothing.")) *Finally*, the Trustee accounted for the costs of trial and continuous litigation of this matter. (*See id.* 19:1–3.) The Bankruptcy Court, in its approval of the Settlement, explained that it had been concerned about the $400,000 settlement number initially, but was ultimately persuaded as to its reasonableness, accounting for the possibility of a trial (and the further possibility that the estate could lose at trial). (*Id.* at 24:5–11.) Appellee's counsel took a similar path by calculating the initial Property valuation as roughly $1.7 million, based on "the only appraisal" presented to the Bankruptcy Court, and subsequently subtracting the cost of sale, existing mortgage, taxes, and interest rates, to conclude that "the best the Trustee would net if he got top dollar at [$]1.7 [million], is about $550,000." (*Id.* at 23:16–22.)

It was indeed recognized that $400,00 is neither the ideal nor highest possible settlement amount. However, this Court "need not be convinced that the settlement is the best possible compromise." *In re Managed Storage Int'l, Inc.*, No. 19-802, 2020 WL 1532390, at *4 (D. Del. Mar. 31, 2020). Therefore, given the thoroughness with which the parties calculated the valuation and the Bankruptcy Court's engagement with the various issues, the Bankruptcy Court did not abuse its discretion in approving a $400,000 settlement based on the possible valuations of the Property, while considering the costs, expense, and unknown outcome of continued litigation.

Ultimately, the Bankruptcy Court held that "the settlement is certainly within the bounds of reasonableness" and concluded that it "respects the Trustee's business judgment." (Hearing Tr. at 24:12–15.) Although Appellant argues that the Bankruptcy Court "blindly relied" on the Trustee's judgment without "carefully examin[ing]" the settlement (App. Br. at 14), such a

contention overstates the Bankruptcy Court's prescribed role at this juncture. A bankruptcy court need not "substitute its judgment for that of the trustee," "but rather canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Decade, S.A.C., LLC*, 2020 WL 564903, at *5 (affirming bankruptcy court's deference to the Trustee's business judgment) (quoting *In re Neshaminy Off. Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986)). Here, the Bankruptcy Court, by weighing the risks of future litigation, the possibility of no recovery, and contractual provisions designed to ensure payment, did not abuse her discretion in determining that the settlement was above the lowest point in the range of reasonableness.

### B. ANY ALLEGED FRAUDULENT TRANSFER DOES NOT AFFECT THE SETTLEMENT

Beyond Appellant's attack of the Bankruptcy Court's *Martin* factors analysis, Newport focuses on a series of curiously timed property transfers between Debtor and Appellee. On December 31, 2021, fifty-four days before filing his initial bankruptcy petition, Debtor transferred the Property to Appellee for one dollar. (App. Br. at 19 (citing Bankr. ECF 10-3 at ¶ 7).) On August 5, 2022, Appellee transferred the property back to Debtor. (*Id.*) These transfers, Appellant argues, evidence fraud sufficient to destroy Debtor and Appellee's ownership of the Property by tenancy by the entirety, and, by extension, should give Debtor a 100% interest in the Property (such that Trustee should be able to sell the Property outright, without any involvement from Appellee). (*See* App. Br. at 20 ("[T]he [Appellee] should not have any interest in the Property because tenancy by the entirety was broken.").) Appellee and Trustee argue that even if the multiple property conveyances destroyed the tenancy by the entirety, Appellee still has a 50% interest in the Property as a joint tenant.

Appellant argues that the Bankruptcy Court abused its discretion by ignoring this fraudulent transfer issue. (*See* App. Br. at 21.) However, the Bankruptcy Court heard argument on

13

this precise issue and even asked Appellant to clarify her position on the question of Appellee's ownership stake. (Hearing Tr. at 10:15–19 ("THE COURT: Ms. Placona, when you talk about the transfer, the pre-petition transfer, what do you say to [the argument that] . . . maybe there's not a tenancy by entirety anymore but Mr. Glanton still has an interest in the home? How do you wipe out his whole interest?")). Appellant never answered the Bankruptcy Court's question, instead resorting to talking about the Property's valuation. (*See generally id.* at 10–11.)

The crux of Appellant's argument—that a broken tenancy by the entirety would leave Appellee with no property interest—has no basis in the caselaw that Appellant cites. For example, Appellant cites *Paulsen v. Olsen*, No. 22-50111, 2023 WL 8019393, at *13 (N.D. Ill. Nov. 20, 2023), an out-of-circuit case about a fraudulent transfer with the intent to turn a joint tenancy to a tenancy by the entirety. The *Paulsen* case is not about reviving a tenancy by the entirety; it is only about fraudulently creating one. Another Illinois case which Appellant cites, *In re Swiontek*, 376 B.R. 851, 867 (Bankr. N.D. Ill. 2007), held that a fraudulently transferred property cannot revert back to a tenancy by the entirety, but, again, did not hold that a co-owner's property interest could be reduced to nothing. Even assuming, *arguendo*, Debtor and Appellee's tenancy by the entirety was soundly defeated, Appellant has made no showing that this would affect either party's rights under § 363(h).

Section 363(h) of the Bankruptcy Code, under which Trustee brought the present adversarial action, expressly allows a trustee to sell the estate's interest "and the interest of any co-owner in property" regardless of whether debtor and co-owner own the property as tenants in common, *joint tenants*, or tenants in the entirety. *See* 11 U.S.C. § 363(h); *see also In re Olsen*, 2017 WL 3311218, at *7. The Court, therefore, has no need to categorize the present ownership structure or determine whether the alleged tenancy by the entirety was destroyed. Since the

14

Bankruptcy Court sufficiently considered the property conveyance issue at hearing, and there is no law to support Appellant's claim, this Court finds that the Bankruptcy Court did not abuse its discretion in affirming the Settlement.

## **CONCLUSION**

For the reasons set forth above, the decision of the Bankruptcy Court to approve the Settlement and Release Agreement (Bankr. ECF No. 26) is **AFFIRMED**. An appropriate Order accompanies this Opinion.

Date: December 26, 2024

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**